## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No._____

HIGH IMPACT, INC., *a Colorado corporation,*

     Plaintiff,

v.

KEVIN MARKEY, *an individual,*

ADVOCACY DIGITAL MEDIA, *an Illinois corporation,*

INTERVOKE, LLC, *a Colorado limited liability company,*

BRANDON GILLESPIE, *an individual,* and

J.P. DONNELLY, *an individual*

     Defendants.

---

## ORIGINAL COMPLAINT AND JURY DEMAND

---

Plaintiff High Impact, Inc., a Colorado corporation ("High Impact") states for its Complaint against Defendants, Kevin Markey, Advocacy Digital Media, Intervoke, LLC, Brandon Gillespie, and J.P. Donnelly (collectively, "Defendants"), as follows:

### NATURE OF THE CLAIMS

1.    This is an action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §101, *et seq.*, misappropriation of trade secrets under the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. 7-74-101, *et seq.*, breach of contract, tortious interference with a contract, and civil conspiracy.

### PARTIES, VENUE AND JURISDICTION

1

2.      Plaintiff High Impact is a Colorado corporation with it principal place of business located at 8008 E. Arapahoe Court, #200, Centennial CO, 80112.

3.      High Impact is a full-service litigation support firm that consults on, develops, and produces high tech animations, illustrations, and similar multimedia strategies and presentations to help attorneys convey complex subject-matter in and outside of the courtroom ("Multimedia Litigation Support Services").

4.      Defendant Kevin Markey ("Markey"), who formerly worked with High Impact, is an individual with a principal residence at 2650 N. Lakeview Ave. #3005, Chicago, IL 60614. Markey is President of Advocacy Digital Media, and has primary or sole control over the actions of Advocacy Digital Media.

5.      Defendant Advocacy Digital Media ("ADM") is an Illinois company with its principal of business located at 2650 N. Lakeview Ave. Chicago, IL 60614. ADM provides Multimedia Litigation Support Services throughout the United States, including within the State of Colorado.

6.      ADM may be served through its registered agent Kevin Markey, 2650 N. Lakeview Ave, #3005, Chicago, IL 60614.

7.      Defendant Intervoke, LLC ("Intervoke") is a Colorado company with its principal place of business located at 730 17th Street, Suite 923, Denver, CO 80202. Intervoke designs and develops various applications in the areas of three dimensional visualization, forensics, augmented and virtual reality, and information technology software throughout the United States, including within the State of Colorado.

8.     Intervoke may be served through its registered agent Tyler L. Woods at 730 17th St. Suite 923, Denver CO 80202 (mailing address) or 2116 Wieler Road, Evergreen, CO 80439 (street address).

9.     Defendant Brandon Gillespie ("Gillespie") is a former employee of High Impact now employed as a senior 3D Developer at Intervoke and is a resident of the State of Colorado residing at 7515 E. Peakview Ave., Apt. 316 Englewood, CO 80111.

10.     Defendant J. P. Donnelly ("Donnelly") is a former employee of High Impact now employed as a senior 3D Developer at Intervoke and is a resident of the State of Colorado residing at 12995 County Road 102, Elbert, CO 80106.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a), because this action arises under the Copyright Act of 1976, 17 U.S.C. §101, et seq.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a), because those claims form a part of the same case or controversy of a claim under the Copyright Act.

12.     Moreover, Markey and ADM reached into Colorado and conspired with Intervoke, Brandon Gillespie and J.P. Donnelly, in Colorado, to misappropriate High Impact's trade secrets and exploit its other valuable confidential and proprietary information, including its copyright protected materials. Markey and ADM were or reasonably should have been aware of Intervoke, Brandon Gillespie and J.P. Donnelly's conduct in Colorado associated with the misappropriation and unauthorized exploitation of High Impact's trade secrets and other valuable confidential and proprietary information, and their infringement of High Impact's copyrights. Consequently, both

3

general and specific personal jurisdiction is proper in Colorado pursuant to C.R.S. § 13-1-124.

13. Venue is proper in the United States District Court for the District of Colorado because many of the acts giving rise to this case, including the infringement of Plaintiff's copyrights, theft of trade secrets, breach of Plaintiff's contracts, and conspiracy occurred in the District of Colorado, and Defendants Intervoke, Gillespie and Donnelly maintain principal places of business and residency there.

## FACTUAL BACKGROUND

### A. High Impact's Intellectual Property

14. High Impact began as a two-man operation in a garage in Vail, Colorado in 1998, based upon an innovative concept of blending scientific accuracy with Hollywood-level graphics to deliver custom legal exhibits that educate and engage audiences in trial and mediation.

15. Since its humble beginnings, High Impact has grown and worked tirelessly over many years to perfect its craft, and is now recognized as an international visual media powerhouse, employing more than 40 professionals and serving clients in all 50 states, Canada, Australia, and Western Europe.

16. High Impact has pioneered numerous technological advances in the litigation support industry utilizing its in-house team of skilled artists, animators, physicians, engineers, and other professionals in audiovisual media and various technical fields, including the creation of three dimensional exhibits and animations. Included among animations developed by High Impact is a work titled "How Dust Gets Into The Body" ("Asbestos Animation"), as well as the following additional works:

Metastasis, Exposure, Anatomy, and Stent Procedure (collectively, "High Impact Animations"). Copyright applications for the High Impact Animations were filed by High Impact on September 1, 2017 with the U.S. Copyright Office, and High Impact has already received notification of the impending registration of the Asbestos Animation and Metastasis.

17.     In furtherance of the creation of the High Impact Animations, and other similar works, High Impact has over many years and at great expense developed proprietary and confidential materials, applications, formulas, scripts, information, and procedures that are unknown to the public, which are only revealed internally to employees and contractors of High Impact pursuant to confidentiality and non-disclosure agreements ("High Impact Trade Secrets").

18.     High Impact takes measures to guard closely and maintain the secrecy of all of its sensitive and valuable information including, without limitation, restricting access to only those employees and contractors with a specific need to know the information, and setting up security measures, including firewalls, to insure that unauthorized persons or competitors cannot access the servers containing its information.

19.     Among the High Impact Trade Secrets are technical "scripts" prepared under consultation with experts in various medical and technical fields, which are then used to develop each of the High Impact Animations ("Animation Scripts").

20.     Over the years, High Impact has spent significant sums to research, develop, maintain and utilize the High Impact Trade Secrets and similar confidential and proprietary information owned by High Impact. The High Impact Trade Secrets and

confidential information also consists of extensive and valuable market research that could not be duplicated or reproduced easily by any other competitor, and is the backbone of High Impact's sales, bidding, pricing, design and new business generation. In the hands of a competitor, or an ex-employee or contractor working for a competitor, High Impact's information could cause substantial financial harm to High Impact, eliminate its competitive advantage, and usurp sales opportunities from High Impact.

21.     High Impact also maintains a website at www.highimpact.com, where prospective consumers may view examples of High Impact's creative and unique illustrations, animations and interactive materials, read case studies, and request a quote from High Impact for the provision of its Multimedia Litigation Support Services.

22.     Significant time and resources have been expended in the careful selection and arrangement of materials on High Impact's website, including the text, images, logos, and other designs featured on the website's home page and "request a quote" page, as featured in Exhibit A to this Complaint ("Website Content"). Copyright applications for the home page and "request a quote" page were filed by High Impact on September 1, 2017 with the U.S. Copyright Office, and High Impact has already received notification of registration of the High Impact website's home page, Reg. No. VA0002066680.

23.     High Impact's website includes samples of visual media created by the company in connection with its Multimedia Litigation Support Services, as well as photographs owned by the company, such as the photograph of a man wearing a white hat with an image of a blue bear on it, featured in Exhibit B to this Complaint ("Blue Bear Hat Photo"). A Copyright application for the Blue Bear Hat Photo, so featured, was filed

by High Impact on September 1, 2017 with the U.S. Copyright Office, and High Impact has already received notification of registration of the Blue Bear Hat Photo, Reg. No. VA0002066681. (The High Impact Animations, the Website Content, and the Blue Bear Hat Photo are hereinafter referred to collectively as the "Copyright Works".)

## B.     Defendants' Infringing Activities

### i.     Markey's employment with High Impact, his access to the High Impact Trade Secrets and his confidentiality obligations.

24.     On November 7, 2012, Markey signed a "Work For Hire Agreement" in connection with his provision of services to High Impact's predecessor in interest ("First Markey Agreement"). All rights and obligations under the First Markey Agreement have since been assigned to High Impact.

25.     Under the First Markey Agreement, Markey was brought in to provide services as a "visual consultant, sales and marketing representative," and attended training for the Multimedia Litigation Support Services.

26.     The First Markey Agreement confirmed that Markey was providing services to High Impact under a "work made for hire" arrangement, such that High Impact would be the owner of any work product developed in whole or in part by Markey.

27.     The First Markey Agreement contained a strict confidentiality provision, under which Markey agreed to, among other things, "not at any time or in any manner, either directly or indirectly," use for personal benefit, divulge, disclose, or communicate in any manner any information that is proprietary to High Impact, including the High Impact Trade Secrets.

28.     The confidentiality provision agreed to by Markey survives termination of the First Markey Agreement, and states that High Impact, in addition to other remedies, "shall be entitled to an injunction to restrain [Markey] from disclosing, in whole or in part, such information, or from providing any services to any party to whom such information has been disclosed or may be disclosed."

29.     The confidentiality provision agreed to by Markey directs that, upon termination of the agreement, Markey must return to High Impact all records, notes, documentation and other items that were used, created, or controlled by Markey during the term of the agreement, including the High Impact Trade Secrets.

30.     The confidentiality provision agreed to by Markey lists various types of information that would be included in the High Impact Trade Secrets, and are valuable, special and unique assets of High Impact, including "inventions," "future plans," "business affairs," "processes," "trade secrets," "technical matters," "customer lists," "product design," and "copyrights." Markey agreed that he would not disclose any such information, and that to do so would be a material violation of the agreement, justifying legal and/or equitable relief.

31.     The First Markey Agreement also contained a non-disclosure clause stating that High Impact would be entitled to an injunction to restrain Markey from disclosing, in whole or in part, High Impact's confidential information or from providing any services to a party to whom such information has been disclosed or may be disclosed. A copy of the First Markey Agreement is attached hereto as Exhibit C.

32.     On August 27, 2015, Markey signed a "Non Disclosure Agreement" for Markey's work, on a confidential basis, in connection with High Impact's projects ("Second Markey Agreement").

33.     The Second Markey Agreement contains confidentiality and non-disclosure clauses largely mirroring such clauses from the First Markey Agreement, and which similarly survive the termination of the agreement. A copy of the Second Markey Agreement is attached hereto as Exhibit D.

34.     While he was working with High Impact, Markey began to accumulate confidential and proprietary information including, without limitation, information within the High Impact Trade Secrets.

**ii.     Markey's departure from High Impact, his breach of his confidentiality obligations, the Formation of ADM, its Use of the High Impact Trade Secrets in Conjunction with Intervoke**

35.     In March of 2016, Markey severed his relationship with High Impact.

36.     On or about March 5, 2017, Markey formed ADM.

37.     In connection with ADM's formation, Markey created or commissioned the creation of a corporate website for ADM.

38.     ADM's corporate website features, in relevant part, text and media, namely the Copyright Works, improperly and in violation of High Impact's copyright, copied directly from High Impact's copyright-protected website and other proprietary information, including a copy of the Blue Bear Hat Photo and an animation example image created by using one of the Animation Scripts. Screencaptures from ADM's website are attached hereto as Exhibit E.

39.    ADM's conduct infringes upon High Impact's copyright in the Copyright Works.

40.    Further, since the formation of ADM, Markey and ADM have conspired to utilize the High Impact Trade Secrets, disclosed to Markey under strict confidentiality and non-disclosure provisions, to solicit business from High Impact's customers.

41.    Likewise, Markey and ADM have engaged the services of Intervoke, a design firm, to produce multimedia products the same as or very similar to those of High Impact. Markey and ADM have conspired with Intervoke to misappropriate and share the High Impact Trade Secrets amongst themselves to the detriment of High Impact.

42.    One of the goals of the conspiracy by and between Markey, ADM and Intervoke was to allow Intervoke to enter into High Impact's field and provide competing Multimedia Litigation Support Services through, among other means, the improper possession and use of the High Impact Trade Secrets.

**iii.    Gillespie's and Donnelly's departure from High Impact, hiring by Intervoke and their participation in the conspiracy with Intervoke and others to use the High Impact Trade Secrets, solicitation of High Impact's customers and other wrongful acts.**

43.    Brandon Gillespie and J.P. Donnelly are former employees of High Impact, and both signed confidentiality, non-disclosure and non-solicitation agreements similar to the agreements signed by Markey.  Copies of these agreements are attached hereto as Exhibit F.

44.    All rights and obligations under the agreements signed by Brandon Gillespie and J.P. Donnelly and High Impact's predecessor in interest have since been assigned to High Impact.

45.     On or about February of 2016, High Impact terminated the employment of Brandon Gillespie and J.P. Donnelly.

46.     Thereafter, Brandon Gillespie and J.P. Donnelly began working for Intervoke.

47.     The confidentiality, non-disclosure and non-solicitation agreements Gillespie and Donnelly signed bar solicitation of High Impact's customers for a period of three years from the date of termination of employment.

48.     Gillespie and Donnelly both worked on the development of various animation projects for High Impact and both have intimate knowledge of High Impact's proprietary, confidential trade secret information including its customer information, its Animation Scripts, High Impact's internal, proprietary methods and processes for creating the High Impact Animations, such as, for example, highly sophisticated three dimensional scanning procedures that have been developed by High Impact over many years.

49.     Gillespie and Donnelly used their deep knowledge of High Impact's proprietary, confidential and trade secret information, including the High Impact Trade Secrets, in conspiring with Intervoke, Markey and ADM to improperly solicit High Impact's customers.

50.     For example, with the assistance of Gillespie and Donnelly, Intervoke has exploited the High Impact Trade Secrets and High Impact's confidential and proprietary information to produce animated content identical or substantially similar to the Asbestos Animation.  Intervoke has further displayed portions of this infringing animated content on its corporate website.

51.     Gillespie and Donnelly have personally participated in the unauthorized copying of the Asbestos Animation from High Impact, and have used their knowledge of the Animation Scripts, the High Impact Trade Secrets and other confidential and proprietary information to produce additional animated content that is featured on both Intervoke's and ADM's corporate website.

52.     Intervoke knows of the confidentiality, non-disclosure and non-solicitation agreements between Gillespie, Donnelly and High Impact and the existence of the High Impact Trade Secrets and other High Impact confidential and proprietary information, through, among other means, the knowledge of its employees, Gillespie and Donnelly and through Markey.

53.     Nevertheless, Intervoke conspired with, encouraged, aided and abetted Gillespie and Donnelly to violate each of his respective confidentiality and non-disclosure agreements and misappropriate the High Impact Trade Secrets and other confidential and proprietary information owned by High Impact.

54.     Intervoke conspired with, aided and abetted Gillespie and Donnelly in improperly acquiring, possessing and using the High Impact Trade Secrets and other confidential and proprietary information, including customer information, to solicit High Impact's customers, and otherwise breach each of Gillespie's and Donnelly's confidentiality, non-disclosure and non-solicitation agreements.

55.     Similarly, Intervoke conspired with, aided and abetted Markey in improperly acquiring, possessing and using the High Impact Trade Secrets and other confidential and proprietary information, including customer information, to, among other

things, improperly solicit High Impact's customers, and otherwise breach Markey's confidentiality, non-disclosure and non-solicitation agreements.

56. Intervoke has utilized the High Impact Trade Secrets and reproductions of the High Impact Animations to improperly solicit clients of High Impact and otherwise compete with High Impact and received significant financial benefit from the same to High Impact's detriment.

57. At no time did High Impact authorize any Defendant to create reproductions of High Impact's website materials, photograph, or animations or otherwise use, disclose, incorporate, exploit or otherwise possess the High Impact Trade Secrets or High Impact's confidential or proprietary information.

58. Notwithstanding their confidentiality and non-disclosure obligations to High Impact, Markey, Gillespie and Donnelly have intentionally, and without authorization, agreed to obtain and disclose, conspired to obtain and disclose and actually did obtain and disclose the High Impact Trade Secrets and other confidential and proprietary information to Intervoke and ADM, and such disclosures have been actively and knowingly solicited by Intervoke and ADM.

59. The Defendants continue to reproduce, make derivative works of, distribute and display High Impact's copyright-protected materials, continue to use and exploit the High Impact Trade Secrets, and are utilizing High Impact's confidential and proprietary information to, among other things, interfere with High Impact's contractual relations, improperly compete with High Impact and otherwise cause significant damage to High Impact.

## CLAIMS AND CAUSES OF ACTION

## COUNT I
## COPYRIGHT INFRINGEMENT
## (17 U.S.C. §§ 106 and 501)
## (Against Markey and ADM)

60.     High Impact incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

61.     The Copyright Works are original works of authorship and High Impact is the sole and exclusive owner of all right, title and interest in and to the copyright in the Copyright Works.

62.     High Impact has filed copyright applications with the U.S. Copyright Office for all of the Copyright Works.

63.     High Impact has received expedited correspondence from the U.S. Copyright Office indicating forthcoming registrations for the Blue Bear Hat Photo and the High Impact home page.

64.     Markey and ADM have not received any license, assignment, or other authorization to exploit and reproduce High Impact's Blue Bear Hat Photo or the Website Content.

65.     Markey and ADM had access to the Website Content and Blue Bear Hat Photo through Markey's confidential relationship with High Impact and/or due to the fact that the Website Content and Blue Bear Hat Photo appeared on publicly accessible websites known to Markey and ADM.

66.     Markey and ADM have and continue to reproduce, make derivative works of, distribute and display High Impact's Website Content and Blue Bear Hat Photo, in violation of the Copyright Act of 1976, U.S.C. §501.

67.     Markey and ADM's acts of infringement alleged herein are committed willfully and in knowing disregard of High Impact's rights.

68.     As a result of Markey and ADM's ongoing acts of infringement alleged herein and in accordance with 17 U.S.C. §504(b), High Impact is entitled to recover from Markey and ADM the damages it has sustained, and will sustain, and any profits obtained by Markey and ADM as a result of or attributable to their infringement. At present, the amount of such damages and profits cannot be fully ascertained by High Impact.

**COUNT II**
**COPYRIGHT INFRINGEMENT**
**(17 U.S.C. §§ 106 and 501)**
**(Against Intervoke, Gillespie and Donnelly)**

69.     High Impact incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

70.     The Copyright Works are original works of authorship and High Impact is the sole and exclusive owner of all right, title and interest in and to the copyright in the Copyright Works.

71.     High Impact has filed copyright applications with the U.S. Copyright Office for all of the Copyright Works.

72.     High Impact has received expedited correspondence from the U.S. Copyright Office indicating forthcoming registrations for the High Impact Animations.

73.     Intervoke, Gillespie, and Donnelly have not received any license, assignment, or other authorization to exploit and reproduce the High Impact Animations or use the Animation Scripts.

74.     Intervoke, Gillespie, and Donnelly had access to the High Impact Animations and Animation Scripts through Gillespie and Donnelly's confidential relationship with High Impact and direct work on High Impact's animations in the past.

75.     Intervoke, Gillespie and Donnelly have and continue to reproduce, make derivative works of, distribute and display the Asbestos Animation, in violation of the Copyright Act of 1976, U.S.C. §501.

76.     Intervoke, Gillespie and Donnelly's acts of infringement alleged herein are committed willfully and in knowing disregard of High Impact's rights.

77.     As a result of Intervoke, Gillespie and Donnelly's ongoing acts of infringement alleged herein and in accordance with 17 U.S.C. §504(b), High Impact is entitled to recover from Intervoke, Gillespie and Donnelly the damages it has sustained, and will sustain, and any profits obtained by Intervoke, Gillespie and Donnelly as a result of or attributable to their infringement. At present, the amount of such damages and profits cannot be fully ascertained by High Impact.

## COUNT III
### MISAPPROPRIATION OF TRADE SECRETS
#### (Colo. Rev. Stat. § 7-74-101, *et seq.*)
#### (Against All Defendants)

78.     High Impact incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

79.     High Impact undertook substantial efforts to maintain the secrecy of the High Impact Trade Secrets, and other confidential and proprietary information and has created and cultivated its trade secrets, confidential and proprietary through a great expense of time, effort and resources.

80.   High Impact's confidential and proprietary information, including as contained within the High Impact Trade Secrets, constitute trade secrets within the meaning of Colorado Revised Statutes 7-74-101, *et seq.*

81.   ADM, Intervoke, Markey, Gillespie and Donnelly have misappropriated, acquired, used, and will inevitably use in the future, unless enjoined by this Court, the High Impact Trade Secrets.

82.   As a direct and proximate result of ADM's, Intervoke's, Markey's, Gillespie's and Donnelly's misappropriation of trade secrets, High Impact has been damaged in an amount to be proven at trial.

83.   ADM, Intervoke, Markey, Gillespie and Donnelly each knew or had reason to know that High Impact's trade secrets were acquired for an improper purpose and by improper means.

84.   ADM's, Intervoke's, Markey's, Gillespie's and Donnelly's misappropriation of the High Impact Trade Secrets was willful and malicious, entitling High Impact to an award of attorneys' fees and punitive damages.

85.   High Impact is further entitled to an injunction prohibiting ADM , Intervoke, Markey, Gillespie and Donnelly from misappropriating and/or using any trade secret or other confidential or proprietary information owned by High Impact, and ordering an immediate return of all documents, information or property taken from High Impact by ADM, Intervoke, Markey, Gillespie or Donnelly.

86.   High Impact has been and will continue to be damaged as a result of ADM's, Intervoke's, Markey's , Gillespie's and Donnelly's activities.

87.     High Impact has lost and is threatened with losing valuable sales, customers, trade secrets, its competitive advantage, and good will, and ADM's, Intervoke's, Markey's, Gillespie's and Donnelly's conduct and acts, as alleged herein, will continue to cause irreparable harm to High Impact unless enjoined by this Court.

88.     Damages alone will not provide High Impact with an adequate remedy at law.

**COUNT IV**
**BREACH OF CONTRACT**
**(Against Markey, Gillespie and Donnelly)**

89.     High Impact incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

90.     High Impact and Markey entered into the First Markey Agreement and the Second Markey Agreement, both of which are valid and enforceable agreements.

91.     Under the First Markey Agreement and the Second Markey Agreement, Markey promised that he would not disclose any confidential or proprietary information or High Impact Trade Secrets to third parties, or use such information for his own purposes.

92.     Markey has breached the First Markey Agreement and the Second Markey Agreement by disclosing High Impact's confidential and proprietary information and the High Impact Trade Secrets to ADM, Intervoke, and other third parties, by using such information for his own purposes, and by using such information to improperly compete with High Impact.

93.    High Impact and Brandon Gillespie and J.P. Donnelly entered into confidentiality, non-disclosure and non-solicitation agreements, all of which are valid and enforceable agreements.

94.    Under the confidentiality and non-disclosure agreements, Gillespie and Donnelly promised that they would not disclose any confidential or proprietary information or High Impact Trade Secrets to third parties, or use such information for their own purposes.

95.    Under the non-solicitation agreement, Gillespie and Donnelly promised that they would not solicit any customers of High Impact for a three year period beginning at termination of their employment with High Impact.

96.    Gillespie and Donnelly have breached their confidentiality, non-disclosure and non-solicitation agreements by disclosing High Impact's confidential and proprietary information and the High Impact Trade Secrets to ADM, Intervoke, and other third parties, by using such information for their own purposes, by using such information to solicit High Impact's customers within three years of termination of their agreements, and to improperly compete with High Impact.

97.    As a direct and proximate result of Markey's breach of the First Markey Agreement and Second Markey Agreement, and Gillespie's and Donnelly's breaches of their respective confidentiality, non-disclosure and non-solicitation agreements, High Impact has been damaged in an amount to be proven at trial.

98.    Further, High Impact is entitled to injunctive relief prohibiting Markey, Gillespie and Donnelly from further disclosing or using High Impact's confidential and proprietary information and the High Impact Trade Secrets.

99.    High Impact is also entitled to injunctive relief prohibiting Markey, Gillespie and Donnelly from soliciting High Impact's customers during the remaining period specified in their contracts.

100.    Damages alone will not provide High Impact with an adequate remedy at law.

## COUNT V
## TORTIOUS INTERFERENCE WITH A CONTRACT
### (Against Intervoke and ADM)

101.    High Impact incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

102.    High Impact has valid and existing contracts with Markey, Gillespie and Donnelly.

103.    Defendants Intervoke and ADM are and have been aware of such contracts and relationships.

104.    Defendants Intervoke and ADM, without privilege, justification or cause, intentionally and unfairly interfered with High Impact's contracts. Defendants' interference has caused certain contracts to be breached.

105.    As a direct and proximate result of Defendants Intervoke's and ADM's tortious interference with High Impact's contracts, High Impact has been damaged in an amount to be proven at trial.

106.    The actions of Defendants Intervoke and ADM in interfering with these contracts were intentional and malicious, entitling High Impact to an award of punitive damages.

## COUNT VI
## CIVIL CONSPIRACY
## (Against All Defendants)

107.   High Impact incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

108.   Defendants conspired to obtain unlawfully and use the High Impact Trade Secrets and other valuable confidential and proprietary information and data to, among other things, improperly compete against High Impact and took joint actions all in furtherance of this conspiracy.  Defendants, had a meeting of the minds with respect to this plan to obtain and exploit the High Impact Trade Secrets and other valuable confidential and proprietary information and data, and took steps jointly and individually in furtherance of the goals of the conspiracy.

109.   Defendants' decision to improperly obtain and use the High Impact Trade Secrets and valuable confidential and proprietary information and data as leverage to gain a business advantage when developing Intervoke's and ADM's business is unlawful and/or accomplished by unlawful means.

110.   High Impact has incurred substantial loss caused by Defendants' unlawful conspiracy to obtain and exploit its trade secrets, information and data.

111.   As a direct and proximate result of Defendants' intentional misconduct and conspiracy, High Impact has and is threatened with losing customers, trade secrets, its competitive advantage, and good will and has suffered, and will continue to suffer damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** High Impact respectfully demands judgment against Defendants as follows:

(1)     Awarding High Impact all of its damages for each of the alleged claims, in an amount to be determined at trial;

(2)     That High Impact be awarded damages in accordance with the Copyright Act of 1976, 17 U.S.C. §504(b) and as shall otherwise appear that it has sustained, and continues to sustain, as a result of Defendants' copyright infringement, together with any profits obtained by Defendants as a result of the copyright infringement;

(3)     That High Impact be awarded its costs in bringing this copyright infringement action as authorized by the Copyright Act, 17 U.S.C. §505;

(4)     That High Impact be awarded damages for misappropriation of its trade secrets, and its confidential and proprietary information as provided by law;

(5)     A preliminary and permanent injunction prohibiting Defendants from misappropriating and/or using any trade secret and other confidential and proprietary information owned by High Impact, and ordering an immediate return of all documents, information, Copyright Works or other property taken from High Impact by Defendants;

(6)     A preliminary and permanent injunction enjoining Defendants from (i) soliciting and/or servicing High Impact's customers until a date occurring at least two years after conclusion of trial on this matter, (ii) soliciting or seeking to hire High Impact's employees until a date occurring at least two years after conclusion of trial on this matter;

(7)    That Defendants be directed to destroy any unauthorized copies, reproductions, or derivatives of the Copyright Works which cannot be returned to Plaintiff;

(8)    That High Impact be awarded its attorneys' fees and the costs of this action;

(9)    That High Impact be awarded punitive damages;

(10)    That High Impact be awarded pre- and post-judgment interest at the maximum rate allowed by law;

(11)    Such other relief to which High Impact may be entitled to at law or in equity.

### Jury Trial

Plaintiff demands a jury trial on all issues so triable.


Respectfully submitted,


*/s/ Andrew B. Clauss*
Andrew B. Clauss, Attorney No. 33831
Chris W. Brophy, Attorney No. 39381
Dinsmore & Shohl LLP
1775 Sherman Street
Suite 2500
Denver, CO 80203
*Attorneys for Plaintiff, High Impact, Inc.*

R. Kenyon Meyer
Dinsmore & Shohl LLP
101 S. Fifth St.
Suite 2500
Louisville, KY 40202
Telephone: (502) 540-2325
Fax: (502) 585-2207
*Attorney for Plaintiff, High Impact, Inc.*

(Application for Admission to the USDC-CO to be filed forthwith)

Plaintiff's Address:
High Impact, Inc.
8008 E. Arapahoe Court, #200
Centennial CO, 80112